IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CARL WAYNE DICKEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:07-CV-0176 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**TO AFFIRM THE DECISION OF THE COMMISSIONER**

Plaintiff brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner of Social Security (Commissioner), denying plaintiff's applications for disability benefits and supplemental security income benefits (SSI). For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED.

I.
PROCEEDINGS

On January 21, 2004, plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income alleging he became unable to work on September 19, 2003 because of a disabling condition. (Tr. 62-65; 447-50). As illnesses, injuries or conditions limiting his ability to work, plaintiff alleged deep vein thrombosis (DVT). (Tr. 89). Plaintiff explained his

condition limits his ability to work because the DVT causes his left leg to swell, precluding him from standing or walking for long periods of time. Plaintiff averred his condition first bothered him in August 1996, eventually rendering him unable to work on September 19, 2003 because the "swelling and pain was too much to bear." Plaintiff noted he completed high school and had two (2) years of college education (Tr. 95, 103), and identified his past work as an aircraft structural assembler, a computer technician, a telephone support person for the software, and an aerospace planner/maintenance coordinator. (Tr. 16, 73-87, 90, 99-100, 469). At the time he filed his applications, plaintiff was forty-seven years old.

On March 12, 2004, the Social Security Administration (SSA), identifying plaintiff's primary diagnosis as "deep vein thrombosis" and secondary diagnosis as "diabetes mellitus," denied plaintiff benefits determining plaintiff's condition was not severe enough to keep him from working. (Tr. 27, 29-35, 451-58). The SSA noted plaintiff was being treated for his DVT and that as long as he followed his doctor's orders and took his medication, his condition remained under control. On May 10, 2004, plaintiff, acting pro se, requested the SSA reconsider its initial determination, explaining he did not agree with the determination because "the determination was incorrect." (Tr. 36 ). On July 12, 2004, the SSA, identifying plaintiff's primary diagnosis as "deep venous thrombosis" and his secondary diagnosis as "diabetes mellitus," denied plaintiff benefits upon reconsideration noting:

- plaintiff's symptoms of deep venous thrombosis and depression were not severe enough to be disabling

- the evidence did not show plaintiff's ability to perform basic work activities was as limited as he had indicated

- based on his description of his past job as a PC technician, that his condition did not prevent him from performing that work.

(Tr. 28, 38-42, 459-64).

In a Disability Report dated May 7, 2004, plaintiff averred he had a new mental limitation in the form of depression, experienced since May 13, 2004. (Tr. 126). Plaintiff stated his depression "makes [him] not want to do anything," and that he is "depressed all the time." (Tr. 130). On July 23, 2004, plaintiff again averred he had a mental or emotional problem that limits what he is able to do, *viz.*, lack of concentration and depression. (Tr. 105, 111).

On August 24, 2004, plaintiff, represented by an attorney, requested a hearing before an Administrative Law Judge (ALJ), explaining he disagreed with the determination on reconsideration because he was "still unable to engage in substantial gainful activity due to [his] medical condition." (Tr. 43)

On July 14, 2005, the ALJ conducted an administrative hearing in this case. (Tr. 465-78). At the hearing, both plaintiff and a vocational expert (VE) testified. On November 17, 2006, the ALJ rendered an unfavorable decision, finding plaintiff not disabled at any time through the date of the decision. (Tr. 15-25).

In his decision, the ALJ found the medical evidence establishes plaintiff has a history of (1) deep venous thrombosis, (2) diabetes mellitus, and (3) depression. (Tr. 19, 24-25). The ALJ found plaintiff's deep venous thrombosis and diabetes mellitus to be severe, but found that plaintiff does not have an impairment or combination of impairments listed in, or that equal in severity, any condition described in Appendix 1, Subpart P, Regulations No. 4. (Tr. 24-25). The ALJ also determined plaintiff's medically determinable impairment of depression is not severe and does not present any work-related mental limitations. (Tr. 23, 25). The ALJ found plaintiff's complaints were out of proportion to the objective medical evidence, which revealed plaintiff's DVT, pain, diabetes, and depression had responded well to medical management. (Tr. 21-22). The ALJ also

found that despite plaintiff's testimony that he must keep his leg elevated to avoid swelling and pain, the record did not contain any such medical treatment recommendation. The ALJ determined plaintiff's alleged symptoms, while alleged to be disabling, did not affect plaintiff's activities. (Tr. 22). The ALJ also found plaintiff's non-compliance with the medical recommendation to exercise affected his credibility. The ALJ concluded the evidence in its entirety, including plaintiff's testimony and the objective medical evidence and reasonable inferences therefrom, did not support the conclusion that plaintiff is incapable of performing any level of sustained work activity. (Tr. 25).

The ALJ determined plaintiff retained the residual functional capacity (RFC) to perform "a limited range of light work" limited to jobs allowing (1) a sit/stand option and (2) a less than moderate concentration deficit. (Tr. 23, 25). The ALJ then determined plaintiff, with his RFC, was not precluded from performing his past relevant work as a telephone support person for PC software. The ALJ thus concluded plaintiff was not disabled under the standards of the Social Security Act at any time through the date of his decision. (Tr. 25).

On January 7, 2007, plaintiff, represented by counsel, requested review of the ALJ's decision. (Tr. 9-11). Upon the Appeals Council's denial of plaintiff's request for review on June 29, 2007, the ALJ's determination that plaintiff was not under a disability became the final decision of the Commissioner. (Tr. 4-7). Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

## II.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the

Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. The fact the ALJ *could* have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ's decision.

III.
ISSUES

Plaintiff's brief in support of his application presents the following issues for review:

1. The Commissioner erred in finding plaintiff can return to his past relevant work as a telephone support person for PC software;

2. The ALJ failed to properly evaluate plaintiff's mental impairments and erred in finding plaintiff's mental impairment presents no work-related mental limitations.

IV.
MERITS

After review of the administrative record, the Court is of the opinion substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and that no errors of law were made. Alternatively, the Court is of the opinion that if errors of law were made, plaintiff has not shown the prejudice necessary to require remand of this case.

A. PRW as a Telephone Support Person for PC Software

By his first ground, plaintiff argues the ALJ erred in determining, at Step Four, that plaintiff can return to his past relevant work (PRW) as a "telephone support person for PC software." Plaintiff first argues he cannot perform his PRW because such work is at the "light" level and he cannot meet the walking and standing requirements of "light" work. Plaintiff contends the sit/stand option included by the ALJ as a limitation in plaintiff's RFC is not consistent with the Dictionary of Occupational Titles (DOT's) definition of "light" work. Plaintiff also argues the ALJ did not conduct a meaningful evaluation of plaintiff's RFC, and that "the ALJ made no findings to support his conclusion" that plaintiff can return to his PRW. Plaintiff argues the evidence, in fact, indicates he cannot return to this type of work, citing the Court to plaintiff's hearing testimony that he has trouble standing or sitting for long periods of time without pain symptoms and swelling and that he has numbness in his hands and feet.

### 1. *Can plaintiff perform his PRW at the "light" exertional level?*

Plaintiff argues the inclusion of the sit/stand option limitation in plaintiff's RFC was not consistent with the DOT's definition of "light" work. The DOT defines "standing as "[r]emaining on one's feet in an upright position at a work station without moving about" and "walking" as "[m]oving about on foot." *DOT*, Appendix C.IV. at 1012. The DOT defines "light work" as requiring "walking or standing to a significant degree." *Id.*, at 1013. Plaintiff also cites the SSR 83-10 definition of "light" work as requiring "a good deal of walking or standing" with only intermittent sitting as support for his argument that he cannot meet the standing and walking requirements of his PRW as a "telephone support person for PC software," defined as a "light" job.

In applying for disability benefits, plaintiff identified his PRW as a telephone software support person from December 1997 to October 1998.[1] (Tr. 73). Plaintiff reported the heaviest weight he lifted while performing this job was less than 10 pounds and that he frequently lifted less than 10 pounds. (Tr. 79). Plaintiff reported that during a normal 8-hour workday performing this job he did not walk, stand, climb, stoop, kneel, crouch, crawl, handle, grab or grasp big objects, or reach. Plaintiff reported he sat at this job for eight hours a day, five days a week, and wrote, typed, or handled small objects.

At the hearing, plaintiff testified he typically sits at home with his left leg elevated to avoid swelling; when he only sits, his leg becomes stiff in the knee area and around the calf. (Tr. 470, 473). Plaintiff testified he is not able to stand or walk for more than about thirty minutes before needing to sit and elevate his leg. At the hearing, the ALJ questioned plaintiff "about a job where [he] could alternate between sitting and standing at will." Plaintiff stated if he could sit as long as

---

[1] Plaintiff's work history consists primarily of personal computer technician work. (Tr. 73).

he wanted, stand as long as he wanted, and change positions as needed, it was possible he could perform the job as long as he kept his left leg elevated. (Tr. 470). Plaintiff testified he could probably perform computer technical support over the telephone if he was allowed to have his left leg elevated and was trained on the technical aspects of the job. (Tr. 474-75).

The VE testified a computer software support position is light, skilled work that could be performed by an individual of plaintiff's age, with a similar work history, who is limited to light work with a sit/stand option and a less than moderate concentration deficit. (Tr. 476). On cross-examination and re-direct, the VE testified such a job would not be eliminated by the need to keep one leg elevated on a daily basis. (Tr. 476-77).

Although the DOT definition of "light" work does require up to six hours a day of standing, a sit/stand option included in an RFC assessment does not make the limited RFC inconsistent with the DOT. SSR 83-12, cited by defendant, is persuasive even though it addresses the capability to do other work within the framework of the medical-vocational rules at Step 5. SSR 83-12 specifically addresses the evaluation of exertional limitations within a range of work or between ranges of work. The regulation instructs that in cases of unusual limitation of ability to sit or stand, *i.e.*, when a plaintiff's RFC requires alternate periods of sitting and standing (and thus the plaintiff is not functionally capable of doing the prolonged standing or walking contemplated for most light work), the ALJ should consult a VE. The regulation notes that persons who can adjust to the need to vary sitting and standing by doing so at breaks, lunch period, etc., would still be able to perform a defined range of work.

Here, the ALJ consulted a VE who testified an individual with plaintiff's history and background with a sit/stand limitation could still perform plaintiff's past relevant "light" work as a telephone PC support person. Moreover, plaintiff testified he previously performed the "light" job

of telephone support person for PC software by sitting for eight hours. The undersigned does not find a sit/stand option limitation, under these circumstances, is inconsistent with the performance of light work, particularly the past relevant work <u>as plaintiff actually performed it</u>.

## 2. *Sufficiency of Review and Findings*

Plaintiff also argues the ALJ did not conduct a meaningful evaluation of plaintiff's RFC,[2] and that "the ALJ made no findings to support his conclusion" that plaintiff can return to his PRW. Plaintiff argues the evidence conclusively indicates, in fact, that he cannot return to this type of work.

In his decision, the ALJ concluded plaintiff retains the RFC to return to his PRW for a sustained period of time. (Tr. 15). The ALJ then proceeded to give a detailed, chronological recitation of the medical evidence of record, noting the record did not support a one-time opinion of a treating medical physician that plaintiff was then unable to function in a work setting secondary to a depressed mood, apathy, mood swings, poor concentration, and daily headaches. (Tr. 16-20). The ALJ also detailed plaintiff's hearing testimony and set forth the specific reasoning for finding plaintiff not entirely credible. (Tr. 21-23). The ALJ concluded that despite the impairments and actual functional limitations, neither the objective medical evidence nor any non-medical evidence established plaintiff's ability to function was so severely limited as to preclude the performance of all work activities. (Tr. 22). The ALJ thoroughly addressed plaintiff's depression, finding such condition was not severe and did not present any work-related mental limitations. (Tr. 23). The ALJ determined that because the record established plaintiff responded favorably to diligent

---

[2]Although plaintiff cites and/or quotes SSR 96-8p (regarding the assessment of RFC in initial claims) and SSR 83-10 (addressing the issue of capability to do other work), plaintiff does not specify in what way the ALJ was deficient in his evaluation of plaintiff's RFC.

medical monitoring for his depression, the impairment did not meet the durational requirements for entitlement to disability benefits. The ALJ found the record established plaintiff retained the RFC for light work, which allows for standing and walking, off and on, for a total of six hours out of an eight-hour workday, but further found such light work to be limited by a less than moderate concentration deficit and the option to sit/stand while in the performance of job duties. The ALJ noted plaintiff reported the physical requirements of his PRW as a telephone support person for PC software required sitting for eight hours and writing, typing, or handling small objects. (Tr. 24). The ALJ noted the VE's testimony that a hypothetical person with the same age, education, and past relevant work history as plaintiff could perform the skilled, light job of a telephone support person for PC software, that there were such jobs in the national economy, and that a requirement for a leg to be elevated would not affect the performance of the job. The ALJ concluded the exertional and nonexertional requirements of plaintiff's PRW are consistent with his RFC and, thus, plaintiff retained the RFC to perform his PRW for a sustained period of time.

     The ALJ made explicit findings regarding the exertional and training demands of plaintiff's PRW, *viz.*, that plaintiff never had to lift more than ten pounds and sat the entire day. The ALJ properly relied on plaintiff's own description of his past relevant work and duties. The ALJ also relied on the testimony of the VE regarding the demands of plaintiff's PRW and the ability to perform such work with a leg elevated and option to sit or stand. The ALJ considered the evidence, including plaintiff's statements in disability documents and to physicians, as well as the VE's testimony, to specifically find the "exertional and non-exertional requirements" of plaintiff's PRW are consistent with his RFC. (Tr. 24). In addition, the ALJ considered plaintiff's testimony at the administrative hearing that he could perform his PRW if he could elevate his leg and received training on the software, to determine plaintiff "retains the functional capacity to perform his past

relevant work for a sustained period of time." *Id*. The ALJ's findings reflected an adequate analysis of plaintiff's limitations, a meaningful review of plaintiff's RFC, and sufficient findings to support his conclusion that plaintiff has the ability to return to his former occupation of telephone support person for PC software.

Moreover, contrary to plaintiff's contention, the evidence did not conclusively indicate plaintiff is, in fact, unable to return to his PRW. The burden of proving an inability to perform past work is on the plaintiff. *Hollis v. Bowen*, 837 F.2d 1378, 1386 (5th Cir. 1988).

Plaintiff testified he has trouble standing or sitting for long without pain symptoms and swelling unless his leg is elevated. Although plaintiff testified he has numbness in his hands and feet, he did not indicate such symptoms interfered with his capacity to do work activity. The administrative record reflects the development of the specific exertional requirements of the job of telephone support person for PC software as plaintiff actually performed it. Although classified as "light" work, plaintiff indicated in his disability reports he actually performed the job at a sedentary level. "The claimant is the primary source for vocational documentation and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." SSR 82-62; *Villa v. Sullivan*, 895 F.2d 1019, 1022-23 (5th Cir. 1990) (absent a challenge to its veracity at the administrative level, it is appropriate for the ALJ to rely upon a claimant's description of past work in a disability report). Moreover, plaintiff testified he could probably perform his PRW if he could elevate his leg and received the necessary training on the software. The VE testified an individual such as plaintiff could perform the "light" telephone PC support position with a leg elevated. Considering plaintiff's written description of his PRW, the VE's testimony of how plaintiff's PRW could be performed, and plaintiff's own testimony of how he performed and could perform his PRW, the record contains

sufficient evidence to support the ALJ's finding that plaintiff is capable of performing his PRW as a telephone support person for PC software.

Plaintiff also quotes SSR 82-62 and persuasive but non-binding case law concerning Step Four evaluations. If, by his first ground, plaintiff is also arguing the ALJ did not fulfill the requirements of Social Security Ruling 82-62, plaintiff did not specify in what aspect the ALJ was deficient. SSR 82-62 guides an ALJ in determining whether a claimant can perform his or her past relevant work. The ruling directs an ALJ to set forth a rationale, in his decision, regarding a claimant's ability to perform past relevant work which " show[s] clearly how specific evidence leads to a conclusion." When an ALJ determines a plaintiff can perform a past relevant job, the SSR directs the decision must contain findings of fact (1) as to the individual's RFC; (2) as to the physical and mental demands of the past job, and (3) as to whether an individual's RFC would permit a return to his or her past job. "[F]or a claim involving a mental/emotional impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety; e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the plaintiff's mental impairment is compatible with the performance of such work." SSR 82-62. The decision must also describe the weight attributed to the pertinent medical and nonmedical factors in the case and reconcile any significant inconsistencies.

The ALJ's decision in this case contains a finding as to plaintiff's RFC, to wit: the RFC for work at the "light exertional level," "limited by a less than moderate concentration deficit and the option to sit/stand while in the performance of job duties." (Tr. 23). The decision also contains a finding as to the physical demands of petitioner's past job as a telephone support person for PC software as reported by plaintiff himself . (Tr. 23-24). Moreover, the decision also contains a

finding plaintiff's RFC would not preclude the performance of his PRW as a telephone support person for PC software. (Tr. 25). The ALJ's decision does not, however, recite any additional findings as to the mental demands of plaintiff's past job as a telephone support person for PC software other than the need for the requisite training. The ALJ determined, however, that plaintiff's mental impairment of depression was not severe as it was alleviated by diligent medical treatment. Moreover, plaintiff did not make any allegations that his mental impairment was not compatible with the performance of his PRW. The ALJ did not address plaintiff's purported lack of concentration other than to credit such allegations by including a limitation to light jobs that could accommodate a less than moderate concentration deficit.

Even if the failure of the ALJ to adhere to the requirements of SSR 82-62 or to otherwise develop the specific mental demands of plaintiff's past relevant work may have been error, not all error warrants reversal and/or remand. When an error consists of disregard of a Ruling, remand is appropriate only when the aggrieved party demonstrates prejudice. *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981). A claimant establishes prejudice by showing that adherence to the Ruling might have led to a different decision, *vis*., that but for the error, the ALJ might have reached a different conclusion. *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000). Similarly, error consisting of a violation of a Regulation may be disregarded when a reviewing court concludes it is harmless. *See Oderbert v. Barnhart*, 413 F.Supp.2d 800, 805 (E.D. Tex. 2006).

Any failure of the ALJ to follow SSR 82-62 in this case did not prejudice plaintiff. Plaintiff does not present additional evidence that calls the ALJ's findings into question nor does he identify existing evidence indicating the ALJ's decision would have been different had the ALJ considered it. Moreover, there is substantial evidence establishing the specifics of plaintiff's PRW as a telephone support person for PC software and his ability to perform such work as he actually

performed it. Further development of plaintiff's PRW as a telephone support person for PC software was not necessary. Plaintiff's first ground should be denied.

B. Evaluation of Mental Impairments/
Finding of No Work-Related Mental Limitations

On May 10, 2004, plaintiff presented for the first time to Dr. Tori Marnell, a family practitioner at the Tulia Rural Health Clinic, "to discuss his filing for disability."[3] Plaintiff reported he had filed and been denied and was currently in the process of applying again. He wanted Dr. Marnell "to review his records and form a summation of his medical problems and comment on his ability to work full-time." (Tr. 380). Dr. Marnell noted plaintiff's past medical history of "depression with some posttraumatic stress syndrome," noting plaintiff was on Risperidone (Risperdal) and Effexor with "fairly good control of his symptoms." *Id*. Dr. Marnell noted plaintiff started his medications in 2001 and they controlled his symptoms somewhat, except for some problems with insomnia and concentration. The doctor noted plaintiff would get her some paperwork about his disability, and they would fill it out. (Tr. 379-81).

On June 15, 2005, plaintiff presented to Dr. Marnell for the second time for a follow-up visit on leg pain and depression. (Tr. 374-75). Plaintiff reported his depression seemed to have worsened, averring he was unable to get out of the house all day, he experienced apathy and hopelessness, and had sleep disruptions. He advised he could not go to sleep until about 4:00 a.m. Plaintiff also reported he had experienced a decrease in eating, had mood swings (but not the "real manic type episodes"), daily headaches, and his concentration was "slowed, but not real impaired." Plaintiff reported his medication used to help, but it did not seem to be helping now. The doctor documented that she gave plaintiff a "Mini-Mental Status Examination" and changed plaintiff's

---

[3]The record contains numerous previous records from the same clinic, but under the care of a different physician, Dr. Archer, who intermittently referenced plaintiff's depression simply as an assessment with a continuation of Effexor medication regimen.

Effexor medication to Wellbutrin.

On that same date, having seen plaintiff only twice, Dr. Marnell completed a form "Treating Physician Mental Functional Assessment Questionnaire" where, in response to the request to "describe current functional limitations related to his/her mental condition," the doctor stated:

> The patient is currently unable to function in a work setting secondary to his depressed mood, apathy, mood swings, and poor concentration, as well as daily headaches associated with his condition.

(Tr. 370). Despite this description of plaintiff's current functional limitations related to his mental condition, the doctor opined plaintiff would be able to manage benefit payments on his own. (Tr. 371). Dr. Marnell also completed a form "Mental Status Report" on plaintiff's behalf. (Tr. 372-73). After filling in the blanks concerning plaintiff's history of mental illness, condition, results of various mental tests, and diagnoses, the doctor stated as her prognosis that plaintiff was "currently trying medication adjustments to see if [he] may be able to achieve a higher level of functioning." (Tr. 373). In response to the question concerning plaintiff's "[a]bility to relate to others and to sustain work," the doctor replied "poor." *Id*. In response to the question concerning plaintiff's "[a]bility to respond to change/stress in work settings," the doctor also replied "poor." *Id*.

On July 19, 2004,[4] plaintiff presented to Dr. Marnell for the third and what appears to be the final time for a follow-up on his depression with posttraumatic stress disorder. Plaintiff, who had been on Wellbutrin for four weeks, with an increase in dosage three weeks earlier, reported "he noticed an improvement in his mood," even though he felt somewhat depressed after learning his disability claim had been denied again. (Tr. 365). Dr. Marnell again increased the dosage of

---

[4]Plaintiff presented to the clinic on June 23, 2004 and was examined by his previous physician, Dr. Archer. The doctor noted the discontinuation of Effexor and the current use of Wellbutrin and directed plaintiff to continue with his routine medications, and increase the Wellbutrin. (Tr. 367).

Wellbutrin to see if plaintiff's symptoms of depression would "continue to improve." *Id.*[5]

The ALJ, as noted previously, rejected Dr. Marnell's opinion finding the "record does not document a referral for a psychiatric evaluation or ongoing counseling for a psychiatric problem by the treating source." (Tr. 18). The ALJ further found the doctor's opinion that plaintiff could not be employed was beyond the treating physician's area of expertise and was a comment on an issue reserved to the Commissioner. Commenting that the opinion was inconsistent with the doctor's own notes, other medical reports, and plaintiff's own reports of his abilities and limitations, the ALJ questioned its objectivity.

After citing the procedure for evaluating mental impairments set forth in 20 C.F.R. §§ 404.1520a and 416.920a, plaintiff argues the ALJ "simply ignored [plaintiff's] treating physician's assessment of his mental health problems." Plaintiff then argues the ALJ overlooked the medical evidence that points to plaintiff's depression/posttraumatic stress disorder, citing May and June 2004 clinical notes wherein plaintiff indicated he was experiencing depressive symptoms. Plaintiff cites SSR 96-8p regarding the assessment of RFC in initial claims and SSR 85-15, clarifying the framework for decisions concerning persons who have *only* a nonexertional limitation. Plaintiff argues "the ALJ failed to consider the various factors set forth in 20 C.F.R. § 404.1527(d)[6] in evaluating the opinion of the treating physician." Quoting the deference standard for treating source medical opinions set forth in SSR 96-2p, plaintiff contends Dr. Marnell's medical assessment should have been given greater weight by the ALJ. Plaintiff concludes the ALJ

---

[5]The record does not contain any additional clinical notes from Dr. Marnell. Numerous subsequent clinical notes of Dr. Archer intermittently reference plaintiff's chronic depression, some times noting it was stable or that plaintiff stated he was doing well with his medication.

[6]Section 404.1527(d) addresses the evaluation of opinion evidence. If a treating source's opinion is not given controlling weight, the following factors are considered in deciding the weight to give to the opinion: examining relationship, treatment relationship, length of treatment and frequency of examination, nature and extent of the treatment relationship, supportability of the opinion afforded by medical evidence, consistency of opinion with the record as a whole, and the specialization of the treating physician.

completely ignored the doctor's opinion as evidenced by his hypothetical to the VE which contained no mention of the mental health issues addressed by Dr. Marnell.

In the final analysis, however, plaintiff has failed to show there was not "good cause" for the ALJ to reject Dr. Marnell's opinion, nor has plaintiff shown how the doctor's opinion was supported by the record. *See Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999). Prior to Dr. Marnell's completion of the form, plaintiff's depression was merely referenced in the clinical notes by his ongoing physician, Dr. Archer, for purposes of continuing his medical regime. Even in May 2004, just one month prior to the completion of the mental assessment questionnaire, Dr. Marnell indicated plaintiff had "fairly good control of his symptoms" of depression on his then-current medication. (Tr. 380). Dr. Marnell's opinion of plaintiff's ability to work appears to have been based solely on plaintiff's report of his symptoms to the doctor on the date in question. Moreover, on the same date Dr. Marnell cited plaintiff's poor concentration as one of the reasons plaintiff could not function in a work setting, she found plaintiff's "attention and concentration" and "remote, recent, [and] immediate memory" were good on the "Mental Status Report." (Tr. 370, 373). Upon changing plaintiff's medication, the same date the report was entered, plaintiff reported mood improvement and stability.[7]

There was sufficient evidence of record to permit the ALJ to find Dr. Marnell's opinion was inconsistent not only with her own treatment notes and that of plaintiff's ongoing physician at the same clinic, but also with records from other medical facilities. Records dating from January 2003 through October 2004 noted plaintiff exhibited a normal mood/affect and denied any psycho-social issues necessitating social work intervention (Tr. 273, 282). Plaintiff exhibited no anxiety or psychosis (Tr. 192). He exhibited normal insight and judgment, recent and remote memory, and

---

[7]Medical impairments that can be remedied or controlled by medication or treatment are not disabling. *See Johnson v. Bowen,* 864 F.2d 340 (5th Cir. 1988).

mood and affect. (Tr. 343).

Dr. Marnell's opinion of plaintiff's inability to function in a work setting was also inconsistent with certain of plaintiff's reported activities, such a helping with construction at his mother's house (Tr. 386), carrying boxes up a stairwell while moving his daughter (Tr. 420), and even his routine trips to his doctor at the clinic. *See, e.g., Gallus v. Callahan*, 117 F.3d 1061, 1064 (8th Cir. 1997) (mental work limitations suggested by a medical professional but contradicted by daily activities, do not have to be considered by the ALJ). In his decision, the ALJ properly considered Dr. Marnell's opinion and was within his discretion when he did not afford such opinion controlling weight, adequately supporting the decision by noting it was inconsistent with the record and was not supported by objective findings.

Plaintiff also argues the ALJ committed reversible error in this case because he "failed to consider the various factors set forth in 20 C.F.R. § 404.1527(d)[8] in evaluating the opinion of the treating physician." The undersigned acknowledges an ALJ need only perform a detailed analysis of the treating physician's views if there is no "reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist." *Newton*, 209 F.3d at 454. Here, however, there is medical evidence specifically controverting Dr. Marnell's opinion rendered upon plaintiff's second out of three visits to her. Plaintiff's primary treating physician, Dr. Archer, who had examined plaintiff almost monthly since September 2003, noted no functional limitations caused by plaintiff's recurrent depression. Plaintiff cites to no other medical sources in the record

---

[8]Section 404.1527(d) addresses the evaluation of opinion evidence. If a treating source's opinion is not given controlling weight, the following factors are considered in deciding the weight to give to the opinion: examining relationship, treatment relationship, length of treatment and frequency of examination, nature and extent of the treatment relationship, supportability of the opinion afforded by medical evidence, consistency of opinion with the record as a whole, and the specialization of the treating physician.

which identify limitations caused by plaintiff's depression. The ALJ may reject the opinion of any physician without applying the factors when the evidence supports a different conclusion or when an opinion is brief, conclusory or unsupported by accepted techniques. *Cf. Spellman v. Shalala*, 1 F.3d 357, 364-65 (5th Cir. 1993).

Moreover, Dr. Marnell's opinion that plaintiff was "unable to function in a work setting" was, in effect, a conclusory statement that plaintiff is disabled.[9] Some opinions by physicians are not medical opinions and, as such, have no "special significance" in an ALJ's determination. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); 20 C.F.R. §§ 404.1527(e), (e)(3), 416.927(e)(3). An opinion that a patient's impairments prevent him from functioning in a work-setting is just such an opinion, *see* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1), and an ALJ is thus not required to evaluate the factors in 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ did not err in this case.

V.
RECOMMENDATION

For the reasons set forth above, it is the RECOMMENDATION of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner finding plaintiff CARL WAYNE DICKEY not disabled and not entitled to a period of disability benefits be AFFIRMED.

VI.
INSTRUCTIONS FOR SERVICE

The District Clerk is directed to send a copy of this Report and Recommendation to plaintiff's attorney of record, and to the Assistant United States Attorney, by the most efficient

---

[9] Such a determination is a legal conclusion the regulations describe as reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(2), (3), 416.927(e)(2), (3); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

means available.

       IT IS SO RECOMMENDED.

       ENTERED this 9th day of September 2010.

                                   _____
                                   CLINTON E. AVERITTE
                                   UNITED STATES MAGISTRATE JUDGE

### \* **NOTICE OF RIGHT TO OBJECT** \*

       Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

       Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).